In re WSC, INC., Debtor.

WSC, Inc., Plaintiff,

v.

The Home Depot, Inc., Romanoff Floor Covering, Inc., Kelly Woodruff, Frank Greenfield, Doug Romanoff and Ben Boatwright, Defendants.

Bankruptcy No. 01–06318.
Adversary No. 02–0119A.

United States Bankruptcy Court, M.D. Tennessee.

Dec. 10, 2002.

Alan Mark Turk, Brentwood, TN, Steven L. Lefkovitz, Nashville, TN, for Plaintiff.

Roger G. Jones, Boult, Cummings, Connors & Berry, Nashville, TN, for Defendants Romanoff Floor Covering, Inc., Doug Romanoff and Ben Boatwright.

Overton Thompson, III, Bass, Berry & Sims, Nashville, TN, for Defendants The Home Depot, Inc., Kelly Woodruff and Frank Greenfield.

## MEMORANDUM

KEITH M. LUNDIN, Bankruptcy Judge.

Defendants move to strike the jury demand by the Debtor in this adversary proceeding. With respect to Defendants that are not creditors and to causes of action legal in nature, the Debtor is entitled to trial by jury. There is no right to trial by jury with respect to Defendant, Home Depot, Inc., because the Debtor's causes of action are integral to the allowance or disallowance of Home Depot's claim in this Chapter 11 case. Because the bankruptcy courts of this district have been designated to conduct jury trials and all parties have consented,[1] this adversary proceeding will be finally determined in

---

1. *See* 28 U.S.C. § 157(e); U.S. Dist. Ct. M.D. Tenn. Admin. Order 127–4 (Oct. 24, 1995).

the bankruptcy court, in part by a jury and in part by trial to the court. The following facts are gathered from the pleadings for purposes of this motion only.

## FACTS

Plaintiff, WSC, Inc., is a Chapter 11 debtor that installed flooring and carpeting for Home Depot USA, Inc. in Nashville, Tennessee, Memphis, Tennessee, Birmingham, Alabama, and Huntsville, Alabama.

Defendant, Home Depot, is a national wholesaler of home improvement products. Defendants Woodruff and Greenfield are employees of Home Depot with district and regional responsibilities for flooring and carpeting installation.

Defendant, Romanoff Floor Covering, Inc., was an installer of flooring for Home Depot in Atlanta, Georgia. Defendant Doug Romanoff is the president and defendant Boatwright is an employee of Romanoff Floor Covering.

Beginning in 1997, the Debtor alleges an oral agreement to act as an installer of flooring and carpeting for Home Depot in Nashville. Between 1997 and 2001, the Debtor expanded its installation work to become Home Depot's primary flooring and carpeting installer in Memphis, Tennessee, Birmingham, Alabama and Huntsville, Alabama.

In January 2001, Greenfield demanded changes in the installation agreement between Debtor and Home Depot in Nashville. When the concessions were refused, Debtor asserts it was wrongfully terminated as Home Depot's primary flooring installer in Nashville.

Shortly thereafter, Home Depot brought Romanoff Floor Covering into the Memphis market to "assist" Debtor with installations. Debtor contends that the Romanoff defendants conspired with the Home Depot Defendants to convert property from the Debtor's Memphis facility, and to usurp the Debtor's position as installer in Memphis through fraud and misrepresentations.

During the Spring of 2001, Home Depot ceased paying the Debtor for installation work in Huntsville, Birmingham and elsewhere. Debtor claims that its facilities in Huntsville and Birmingham were taken over, at the urging of Home Depot, by an employee of the Debtor.

The Debtor filed Chapter 11 on June 4, 2001. Home Depot was scheduled as a creditor, with a claim of $5,371.71. On February 8, 2002, the Debtor filed this adversary proceeding. The complaint asserts six causes of action against Home Depot: breach of contract; violation of the Tennessee Consumer Protection Act, TENN.CODE ANN. § 47–18–101–et seq.; constructive fraud; negligent material omission (non-intentional constructive fraud); conversion; and, civil conspiracy.

Against Woodruff and Greenfield, the Debtor asserts constructive fraud, negligent material omission (non-intentional constructive fraud), conversion and civil conspiracy.

Against the Romanoff defendants, the Debtor asserts constructive fraud, negligent material omission (non-intentional constructive fraud), promissory fraud, fraudulent misrepresentation (Doug Romanoff and Boatwright only), negligent misrepresentation (Doug Romanoff and Boatwright only), conversion and civil conspiracy.

The Debtor seeks compensatory damages from Home Depot of $350,000, compensatory damages of $250,000 from each of the other defendants and punitive damages of $1,000,000 jointly and severally.

On October 16, 2002, Home Depot filed a proof of claim for $102,129.19, based on breach of contract and chargebacks. Nei-

ther Romanoff Floor Covering, Inc. nor the individual defendants—Doug Romanoff, Boatwright, Greenfield and Woodruff—are creditors of the Debtor.

The Debtor demanded trial by jury for all causes of action against all defendants. All defendants and the Debtor consented to final adjudication in the bankruptcy court and consented to jury trial in the bankruptcy court; but, the defendants reserved this challenge to the Debtor's threshold right to trial by jury.

## DISCUSSION

### The Complaint Supports the Debtor's Seventh Amendment Right to Trial by Jury

The Seventh Amendment provides: "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved...." U.S. CONST. amend. VII. The Supreme Court has construed the phrase "Suits at common law" to mean " 'suits in which *legal* rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered.' " *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 41, 109 S.Ct. 2782, 2790, 106 L.Ed.2d 26 (1989) (quoting *Parsons v. Bedford*, 28 U.S. (3 Pet.) 433, 447, 7 L.Ed. 732 (1830)).

The Seventh Amendment preserves the right to a jury trial as it existed at common law in the courts of England in 1791. Jury trial rights also attach to statutory rights that are analogous to common law causes of action. *See, e.g., Curtis v. Loether*, 415 U.S. 189, 193, 94 S.Ct. 1005, 1007, 39 L.Ed.2d 260 (1974).

In *Granfinanciera*, the Supreme Court articulated this test to determine whether a cause of action supports a right to trial by jury:

First, we compare the statutory action to 18th-century actions brought in the courts of England prior to merger of the courts of law and equity. Second, we examine the remedy sought and determine whether it is legal or equitable in nature.... The second stage of this analysis is more important than the first. If, on balance, these two factors indicate that a party is entitled to a jury trial under the Seventh Amendment, we must decide whether Congress may assign and has assigned resolution of the relevant claim to a non-Article III adjudicative body that does not use a jury as a factfinder.

*Granfinanciera*, 492 U.S. at 42, 109 S.Ct. at 2790 (internal citations and quotations omitted).

The defendants concede that all causes of action in this complaint are actions at law or statutory actions analogous to legal actions with respect to which the Debtor would be entitled to trial by jury, absent bankruptcy.

But focusing on the third *Granfinanciera* factor, the defendants assert that the Debtor forfeited all rights to trial by jury by filing Chapter 11. Alternatively, Home Depot argues that its status as a creditor frames the actions against it as counterclaims within the bankruptcy court's equity jurisdiction.

### Debtor's Seventh Amendment Right is Limited But Not Forfeited

Citing *N.I.S. Corp. v. Hallahan (In re Hallahan)*, 936 F.2d 1496 (7th Cir.1991), the defendants reach for an across-the-board waiver of the Seventh Amendment right to trial by jury when a debtor files a bankruptcy case. In *Hallahan*, a Chapter 7 debtor demanded a jury trial as the defendant in an action to determine dischargeability under 11 U.S.C. § 523(a)(6). Applying the first two parts of the test

from *Granfinanciera,* the Seventh Circuit concluded: "[A] dischargeability proceeding is a type of equitable claim for which a party cannot obtain a jury trial. Dischargeability proceedings ... historically ... have been equitable actions tried without juries[.]" *Hallahan,* 936 F.2d at 1505.

In an alternative holding, the Seventh Circuit then stated that the bankruptcy filing itself forfeited a debtor's right to jury trial in dischargeability litigation:

> Even if we were to assume that the dischargeability action was legal in nature, however, Hallahan cannot claim a right to jury trial because, as a Chapter 7 debtor, he voluntarily submitted his case to bankruptcy court.... [I]f creditors "by presenting their claims * * * subject[ ] themselves to all the consequences that attach to an appearance," thereby losing any jury trial right otherwise guaranteed by the Seventh Amendment, debtors who initially choose to invoke the bankruptcy court's jurisdiction to seek protection from their creditors cannot be endowed with any stronger right.

*Hallahan,* 936 F.2d at 1505–06 (internal citations omitted).

The Sixth Circuit has quoted both holdings in *Hallahan* with approval. In *Longo v. McLaren (In re McLaren),* 3 F.3d 958 (6th Cir.1993), Longo filed an adversary proceeding in McLaren's Chapter 7 case to determine dischargeability under 11 U.S.C. §§ 523(a)(2), (a)(4) and (a)(6). McLaren demanded a jury.

The Sixth Circuit held that McLaren was not entitled to a jury trial to determine the dischargeability of debts. Quoting extensively from *Hallahan,* the Sixth Circuit found injustice in McLaren's plea for a jury trial:

> The case at issue is also like *Hallahan* in that it presents a perfect example of the injustice that would result from granting a voluntary debtor who is a defendant in an adversary proceeding a right to a jury trial on demand. After McLaren filed for bankruptcy, Longo was prevented by the automatic stay from commencing or continuing any litigation outside of the bankruptcy case to recover his claim. Longo was thus forced to initiate this dischargeability proceeding in bankruptcy court. Under *Granfinanciera,* Longo's filing stripped him of any right to a jury trial he might otherwise have claimed. It would be anomalous to hold that McLaren could obtain a jury trial in bankruptcy court in these circumstance. "Debtors then would be able to block their creditors' access to a jury trial without compromising their own ability to demand a jury in their preferred forum." *Hallahan,* 936 F.2d at 1506. Accordingly, this Court finds that the Seventh Amendment confers no right to a jury trial on a debtor, like McLaren, who files voluntarily for bankruptcy and is a defendant in an adversary proceeding. "Even if [McLaren] was pursuing a 'legal' claim, by submitting it to the bankruptcy forum he lost any Seventh Amendment jury trial right he might have asserted." *Id.* at 1506.

*McLaren,* 3 F.3d at 960–61.

The defendants in this adversary proceeding argue that the alternative holding in *Hallahan* quoted by the Sixth Circuit in *McLaren* denies the Debtor's jury demand with respect to all causes of action and all defendants. As stated by one defendant, the Debtor is not entitled to trial by jury "because he had voluntarily submitted himself to the equitable jurisdiction of the bankruptcy court by filing the bankruptcy petition." There are good reasons not to read *McLaren* so broadly.

The Sixth Circuit panel in *McLaren* limits the alternative holding in *Hallahan* to voluntary bankruptcies when the debtor "is a defendant in an adversary proceeding."[2] *McLaren*, 3 F.3d at 961. Here, the Debtor is the plaintiff, not a defendant, and the causes of action involve augmenting this bankruptcy estate for the benefit of all creditors, not the dischargeability of debts.

■ The U.S. Supreme Court has not embraced the broad forfeiture of Seventh Amendment rights in bankruptcy cases that appears to underlie the alternative holding in *Hallahan*. As explained by Justice Brennan in *Granfinanciera*, once it is determined that a cause of action in bankruptcy is a suit at law, Congress has limited authority to impede the Seventh Amendment right to trial by jury:

> Congress may only deny trials by jury in actions at law ... in cases where "public rights" are litigated: ... where the Government is involved in its sovereign capacity under an otherwise valid statute creating enforceable public rights. Wholly private tort, contract, and property cases, as well as a vast range of other cases, are not at all implicated.
>
> . . . .
>
> ... [Congress] lacks the power to strip parties contesting matters of private right of their constitutional right to a trial by jury.... "[L]egal claims are not magically converted into equitable issues by their presentation to a court of equity," ... nor can Congress conjure away the Seventh Amendment by mandating that traditional legal claims be brought there or taken to an administrative tribunal.
>
> . . . .
>
> ... Unless a legal cause of action involves "public rights," Congress may not deprive parties litigating over such a right of the Seventh Amendment's guarantee to a jury trial.

*Granfinanciera*, 492 U.S. at 51–53, 109 S.Ct. at 2795–96 (internal citations and quotations omitted).

In *Granfinanciera*, the Supreme Court held that a bankruptcy trustee's suit to recover a fraudulent conveyance under 11 U.S.C. § 548 was an action at law that implicated only private rights when the defendant did not assert a claim against the bankruptcy estate. In *Granfinanciera*, Justice Brennan used causes of action like those in this adversary proceeding as examples of private rights:

> In *Northern Pipeline Construction Co.*, 458 U.S. at 71, 102 S.Ct. at 2871, the plurality ... emphasized that state-law causes of action for breach of contract or warranty are paradigmatic private rights, even when asserted by an insolvent corporation in the midst of Chapter 11 reorganization proceedings.... [F]raudulent conveyance actions by bankruptcy trustees ... are quintessentially suits at common law that more nearly resemble state-law contract claims brought by a bankrupt corporation to augment the bankruptcy estate than they do creditors' hierarchically ordered claims to a pro rata share of the bankruptcy res. They therefore appear matters of private rather than public right.

---

**2.** Other courts have reported decisions extending the broad forfeiture of Seventh Amendment rights in *Hallahan* to debtors as plaintiffs, generally. *See, e.g., Schwartz v. Prudential Ins. Co. of Am. (In re Kridlow)*, No. 98–0833, 1999 WL 97939 (Bankr.E.D.Pa. Feb. 19, 1999); *Crews v. Lyons (In re Lyons)*, 200 B.R. 459 (Bankr.S.D.Ga.1994); *Haile Co. v. R.J. Reynolds Tobacco Co. (In re Haile Co.)*, 132 B.R. 979, 980–81 (Bankr.S.D.Ga.1991).

*Granfinanciera,* 492 U.S. at 55–56, 109 S.Ct. at 2797–98 (internal citations omitted). Again citing *Northern Pipeline Construction Co.,* in a note, Justice Brennan states:

> "[T]he restructuring of debtor-creditor relations, which is at the core of the federal bankruptcy power, must be distinguished from the adjudication of state-created private rights, such as the right to recover contract damages that is at issue in this case. The former may well be a 'public right,' but the latter obviously is not."

*Id.* at 56 n. 12, 102 S.Ct. 2858, 109 S.Ct. at 2798 n. 12.

As Justice White points out in his dissent, the majority in *Granfinanciera* rejected the argument that lies at the heart of the alternative holding in *Hallahan*— that the filing of the bankruptcy case itself somehow forfeits all Seventh Amendment rights in actions by a debtor to gather the bankruptcy estate. Justice White explains that the Supreme Court's earlier decision in *Katchen v. Landy,* 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966), required holding that there was no jury trial right of the sort recognized by the majority because Congress could and did expand bankruptcy court jurisdiction in 1978 to include the recovery of fraudulent conveyances. *Granfinanciera,* 492 U.S. at 72–73, 109 S.Ct. at 2806–07 (White, J., dissenting).

In *Katchen,* the Supreme Court held that the bankruptcy court had jurisdiction to order a creditor to surrender preferences without a jury trial when the preference action was filed by the bankruptcy trustee as a counterclaim to a proof of claim filed by the creditor. In *Granfinanciera,* Justice Brennan explained the holding in *Katchen* very differently than the dissenter, Justice White:

> Our holding did not depend ... on the fact that "[bankruptcy] courts are essentially courts of equity".... Our decision turned, rather, on the bankruptcy court's having "actual or constructive possession" of the bankruptcy estate, and its power and obligation to consider objections by the trustee in deciding whether to allow claims against the estate.... [I]f petitioner had not submitted a claim to the bankruptcy court, the trustee could have recovered the preference only by a plenary action, and that petitioner would have been entitled to a jury trial if the trustee had brought a plenary action in federal court.... "[A]lthough petitioner might be entitled to a jury trial on the issue of preference if he presented no claim in the bankruptcy proceeding and awaited a federal plenary action by the trustee, when the same issue arises as part of the process of allowance and disallowance of claims, it is triable in equity."
>
> ... [U]nder the Seventh Amendment, a creditor's right to a jury trial on a bankruptcy trustee's preference claim depends upon whether the creditor has submitted a claim against the estate, not upon Congress' precise definition of the "bankruptcy estate" or upon whether Congress chanced to deny jury trials to creditors who have not filed claims and who are sued by a trustee to recover an alleged preference. Because petitioners here ... have not filed claims against the estate, respondent's fraudulent conveyance action does not arise "as part of the process of allowance and disallowance of claims." Nor is that action integral to the restructuring of debtor-creditor relations. Congress therefore cannot divest petitioners of their Seventh Amendment right to a trial by jury.

*Granfinanciera,* 492 U.S. at 57–59, 109 S.Ct. at 2798–99 (internal citations omitted).

Thus, the majority in *Granfinanciera* rejected Justice White's view that Seventh Amendment rights in bankruptcy were determined by bankruptcy court jurisdiction over property of the estate. Instead, Justice Brennan more narrowly confined Congress' power to eliminate jury trial rights in bankruptcy based on the public versus private rights distinction: It was beyond Congress' power to abolish trial by jury with respect to the adjudication of private rights when that adjudication did not occur as part of the adjustment of a creditor-debtor relationship.

The alternative holding in *Hallahan* seems to proceed from the mistaken assumption that submission of all property of the estate to the jurisdiction of the bankruptcy court effects an across the board forfeiture of the Seventh Amendment rights of debtors. If this were true, the Supreme Court in *Granfinanciera* would have followed Justice White's reading of the decision he authored in *Katchen,* and the jurisdiction of bankruptcy courts as expanded in 1978 to include the recovery of fraudulent conveyances would have engulfed the defendants' jury trial demands. *Granfinanciera* rejects the *Katchen*-based notion that bankruptcy court jurisdiction over property of the estate broadly converts what might otherwise be actions at law into actions triable in equity.

Barely a year and a half after *Granfinanciera,* the Supreme Court bolstered Justice Brennan's rewriting of Seventh Amendment rights in bankruptcy in *Langenkamp v. Culp,* 498 U.S. 42, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990). In *Langenkamp,* a trustee in bankruptcy sued to recover preferential transfers from creditors that filed claims against the estate. The defendants demanded trial by jury.

The Supreme Court gave this account of *Granfinanciera* and *Katchen:*

> In *Granfinanciera* we recognized that by filing a claim against a bankruptcy estate the creditor triggers the process of "allowance and disallowance of claims," thereby subjecting himself to the bankruptcy court's equitable power. If the creditor is met, in turn, with a preference action from the trustee, that action becomes part of the claims-allowance process which is triable only in equity.... [T]he creditor's claim and the ensuing preference action by the trustee become integral to the restructuring of the debtor-creditor relationship through the bankruptcy court's *equity jurisdiction.* As such, there is no Seventh Amendment right to a jury trial. If a party does *not* submit a claim against the bankruptcy estate, however, the trustee can recover allegedly preferential transfers only by filing what amounts to a legal action to recover a monetary transfer. In those circumstances the preference defendant is entitled to a jury trial.

*Langenkamp,* 498 U.S. at 44–45, 111 S.Ct. at 331 (internal citations omitted).

The alternative holding in *Hallahan* quoted in *McLaren* must be read consistently with *Granfinanciera, Katchen* and *Langenkamp. Granfinanciera's* rejection of a property of the estate-based analysis of Seventh Amendment rights, in favor of the public versus private rights distinction, unhinges the defendants' broader reading of the alternative holding in *Hallahan.*

■■■ Filing a bankruptcy case submits all of a debtor's property to the jurisdiction of the bankruptcy court—including suits to collect or augment the estate based on causes of action like those in this adversary proceeding. But these property rights are not converted into *public rights* by the mere filing of the bankruptcy case.

By voluntarily submitting to the bankruptcy court's equitable powers to determine claims against the bankruptcy estate, a debtor forfeits its jury trial right only with respect to causes of action "integral to the restructuring of the debtor-creditor relationship." *Langenkamp,* 498 U.S. at 44, 111 S.Ct. at 331. Outside the claims resolution process, there is no support in Supreme Court precedent after *Granfinanciera* for reading the alternative holding in *Hallahan* to forfeit a debtor's Seventh Amendment rights in suits at law unrelated to the allowance and disallowance of claims.

Other courts of appeals have recognized that the Seventh Amendment question is more complicated than the alternative holding in *Hallahan* when the defendant is not a creditor or when the cause of action involves augmenting the bankruptcy estate rather than adjudicating claims. In *In re Jensen,* 946 F.2d 369 (5th Cir.1991), the Fifth Circuit rejected the argument that filing bankruptcy forfeits a debtor's right to trial by jury in state law causes of action against a defendant that has not filed claims against the estate. Citing *Granfinanciera* and *Katchen,* the Fifth Circuit explained:

> The petition for bankruptcy itself has nothing to do with whether the bankruptcy court can exercise equitable jurisdiction over a debtor's pre-petition claims. Its only effect is to pass ownership and control of the claims to the estate and its representative, either a trustee or a debtor in possession. The claims belong to the estate after the petition for bankruptcy is filed, but that does not mean that the claims are then within the court's equitable jurisdiction or that they somehow become equitable in nature. To the contrary, the [Supreme Court] has indicated that the right to a jury trial does to depend on

the precise definition of the bankruptcy estate.

> Nor do we find that the petition for bankruptcy somehow "waives" the debtor's jury trial right. The court in *Granfinanciera* specifically noted that its rationale rested not on the traditional concept of "waiver" but on the idea expressed in *Katchen* that the creditor subjected his claim to the bankruptcy court's equitable jurisdiction by filing it against the estate. The creditor's claim invoked the equitable process by which the bankruptcy court apportions the estate among the creditors....

> As in *Granfinanciera,* the debtors' claims do not here "arise as part of the process of allowance and disallowance of claims." Nor are they "integral to the restructuring of debtor-creditor relations." Rather they are essentially claims brought by the debtor (in possession) against non-creditor third parties to augment the bankruptcy estate. Under these circumstances, we are unable to conclude that the debtor's petition for bankruptcy subjected his claims to the equitable jurisdiction of the bankruptcy court.

*Jensen,* 946 F.2d at 373–74 (internal citations omitted).

Perhaps adhering more closely to the teachings of *Granfinanciera,* in *Germain v. Connecticut National Bank,* 988 F.2d 1323 (2d Cir.1993), the U.S. Court of Appeals for the Second Circuit applied public versus private rights analysis to determine whether a Chapter 7 trustee was entitled to trial by jury in a suit against a bank for postpetition torts and breaches of contract. The Second Circuit concluded that the trustee was entitled to trial by jury notwithstanding that the bank had filed a proof of claim. The Second Circuit rejected the bank's argument that the voluntary bankruptcy petition "waived" any right the

trustee had to trial by jury. The Second Circuit explained that the bank's proof of claim did not automatically render the trustee's lawsuit an integral part of the claims allowance process; rather, the trustee's lawsuit was a private right of action that did not forfeit Seventh Amendment rights under *Granfinanciera:*

> [T]he *Katchen, Granfinanciera,* and *Langenkamp* line of Supreme Court cases stands for the proposition that by filing a proof of claim a creditor forsakes its right to adjudicate before a jury any issue *that bears directly on the allowance* of that claim—and does so not so much on a theory of waiver as on the theory that the legal issue has been converted to an issue of equity. It is reasonable that a creditor or debtor who submits to the equity jurisdiction of the bankruptcy court thereby waives any right to a jury trial for the resolution of disputes vital to the bankruptcy process, such as those involving the determination of who is a valid creditor and which creditors are senior to the creditor hierarchy. We will not presume that the same creditor or debtor has knowingly and willingly surrendered its constitutional right to a jury trial for the resolution of disputes that are only incidentally related to the bankruptcy process.
>
> . . . .
>
> We conclude that neither precedent nor logic supports the proposition that either the creditor of the debtor automatically waives all right to a jury trial whenever a proof of claim is filed. For a waiver to occur, the dispute must be part of the claims-allowance process or affect the hierarchical reordering of creditors' claims. Even there the right to a jury trial is lost not so much because it is waived, but because the legal dispute has been transformed into an equitable issue.

> . . . [W]e believe that if a party is going to be deprived of as fundamental a constitutional right as a jury trial, the controversy must be inextricably intertwined with a public right; the "involvement" may not be casual or vague.
>
> . . . .
>
> We do not believe that the Trustee's action here bears a close nexus to any statutory public right. Indeed, his state law causes of action "are paradigmatic private rights, even when asserted by an insolvent corporation in the midst of Chapter 11 reorganization proceedings." His suit is aimed at enhancing the bankruptcy estate and does not involve any other creditor's rights or the relationship among the creditors as a group or between the debtor and another creditor. The suit seeks compensation for damage done. It has nothing to do with the essence of the bankruptcy regulatory scheme of allowing or reordering claims.

*Id.* at 1329–31.

Distinguishing *Germain* and rejecting the alternative holding in *Hallahan,* the U.S. Court of Appeals for the Third Circuit in *Billing v. Ravin, Greenberg & Zackin, P.A.,* 22 F.3d 1242 (3d Cir.1994), held that a Chapter 11 debtor did not have a right to trial by jury in a legal malpractice action against bankruptcy counsel raised as a defense to counsel's claim for postpetition fees. The Third Circuit knitted together *Granfinanciera, Katchen* and *Langenkamp* to reach this fine distinction:

> [L]egal claims that may involve private rights nonetheless may, in certain bankruptcy contexts, be decided in equity.
>
> . . . .
>
> It is clear that a creditor who submits a proof of claim against the bankruptcy estate has no right to a jury trial on issues raised in defense of such a claim. A question still exists as to whether the

petitioner in bankruptcy is without jury rights in the very same dispute.

. . . .

The waiver theory of *Hallahan,* rejected by *Jensen* and *Germain,* raises as many questions as it answers. . . . A voluntary petition in bankruptcy does not automatically begin the process of allowance and disallowance of claims. The fact that the debtor may have voluntarily submitted itself to the bankruptcy court's equitable jurisdiction does not complete the analysis. A court must also ask whether the resolution of the particular dispute at issue is necessarily part of the process of the disallowance and allowance of claims. . . .

The close connection between the malpractice action and the objections to fees leads us to conclude that the debtors' allegations of malpractice are part of the process of allowance and disallowance of claims. . . .

The debtors have no Seventh Amendment right to trial by jury, not because of specific waiver of Seventh Amendment rights, but because their claim has been converted from a legal one into an equitable dispute over a share of the estate.

*Billing v. Ravin, Greenberg & Zackin, P.A.,* 22 F.3d at 1247–53 & n. 14 (internal citations and footnotes omitted).

This adversary proceeding starkly illustrates the "many questions" raised by the alternative holding in *Hallahan.* It is conceded that the Debtor seeks legal remedies for purposes of the first step analysis in *Granfinanciera.* This complaint asserts quite precisely the "paradigmatic" causes of action that are defined by the Supreme Court as private rights in *Granfinanciera* and *Northern Pipeline.*

■ But with respect to Home Depot, the Debtor's causes of action arise from the same facts, involve the same contracts and measure the same conduct that form the basis for Home Depot's claim in this bankruptcy case. The actions against Home Depot are integrally related to Home Depot's proof of claim: The actions against Home Depot cannot be decided by any trier of fact without also resolving the allowance or disallowance of Home Depot's claim. As Judge Brown explained in *Citicorp North America, Inc. v. Finley (In re Washington Manufacturing Co.),* 128 B.R. 198 (Bankr.M.D.Tenn.1991), when a Chapter 11 trustee sought trial by jury in a fraudulent conveyance action against a creditor, the jury demand failed because the trustee's action was an objection to the creditor's claim:

[I]t is the fact that the Trustee's fraudulent conveyance counterclaim is in reality an objection to the allowance of [creditor's] secured claim which strips the Trustee of a jury trial right. The Trustee's counterclaim is a part of the claims allowance process which is within the Court's equity power. The focus of the Supreme Court is on the nature of the action before the court and whether the action is a part of the claims allowance and debtor-creditor restructuring process.

*Id.* at 202 (internal citations omitted). The U.S. District Court for the Middle District of Tennessee addressed the issue in connection with a motion to withdraw the reference in the same case, and came to the same conclusion citing *Katchen, Granfinanciera* and *Langenkamp:*

Since Citicorp has filed a claim against the bankruptcy estate in this case, the trustee's fraudulent conveyance claim arises out of the allowance of claims process, and no Seventh Amendment right to a jury trial exists. This result follows from the reasoning that once a creditor makes a claim in bank-

ruptcy, the fraudulent conveyance issue becomes closely intertwined with the federal regulatory scheme of bankruptcy, and thus may be adjudicated by a non-Article III court without a jury....

... [O]nce the creditor makes a claim against the bankruptcy estate, any subsequent fraudulent conveyance or preference counterclaim by the trustee is equivalent to an objection to the creditor's claim, and therefore part of the claims allowance process.

*Citicorp North America, Inc. v. Finley (In re Washington Manufacturing Co.)*, 133 B.R. 113, 117 (M.D.Tenn.1991).

■ In contrast, Romanoff Floor Covering, Inc. and the individual defendants—Woodruff, Greenfield, Doug Romanoff and Boatwright—are not creditors and make no claims for participation in the assets of this bankruptcy estate. With respect to these other defendants, the Debtor's actions are brought to augment the bankruptcy estate and are in no way related-integrally or otherwise—to the hierarchal ordering of claims against this estate. It cannot be said that the Debtor has "sought protection" from these other defendants from whom the Debtor seeks damages. There is no "reciprocity" fear with respect to these other defendants as expressed in *Hallahan* and *McLaren*—these other defendants would be entitled to trial by jury in the bankruptcy court or elsewhere had they demanded trial by jury, and no anomaly results if the Debtor's Seventh Amendment right is respected. The logic of the alternative holding in *Hallahan* breaks down when the debtor demands a jury in a private right of action that does not engage the process of allowing or disallowing claims against the bankruptcy estate.

## One Trial—Ordinary Estoppel Principles Apply

■ That some of these related actions are triable to a jury and some are not influences the remaining course of this adversary proceeding. As explained by one bankruptcy court:

The rule which has developed is that where legal and equitable claims are combined in an action, the action must be structured and tried in a manner that preserves the right to jury trial with respect to the legal claim. Where the legal claim and the equitable claim have common issues of fact, the right to a jury trial cannot be negated through prior determination of the equitable claim by the court. This means that if the legal claim and the equitable claim do have common issues of fact, the legal claim must be decided first by the jury. *See Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 510–11, 79 S.Ct. 948, 957, 3 L.Ed.2d 988 (1959) ("only under the most imperative circumstances, circumstances which in view of the flexible procedures of the Federal Rules we cannot now anticipate, can the right to a jury trial of legal issues be lost through prior determination of equitable claims."); *Richardson v. Leeds Police Dept.*, 71 F.3d 801, 806 (11th Cir.1995) ("When legal and equitable causes are joined in one action, the legal issues must be decided first.... To the extent that the elements of the two types of claims mirror one another, the jury's findings on the legal questions are binding in resolving the equitable issues."); *Perez–Serrano v. DeLeon–Velez*, 868 F.2d 30, 32 n. 1 (1st Cir.1989) ("Under the doctrine of 'law of the case,' a jury cannot re-examine findings made by the court. Thus, because the seventh amendment dictates that the jury determine liability in this case, it was error for the court to assess liability, thus foreclosing the possibility of a subsequent jury determination on the issue.");

*Skinner v. Total Petroleum, Inc.*, 859 F.2d 1439, 1443 (10th Cir.1988) ("The strictures of the Seventh Amendment are particularly applicable in a case where, due to the presence of both equitable and legal issues, trial is both to the jury and to the court. In such a situation, when a case involves both a jury trial and a bench trial, any essential factual issues which are central to both must be first tried to the jury, so that the litigants' Seventh Amendment jury trial rights are not foreclosed on common factual issues.").

*Magers v. Bonds (In re Bonds Distrib. Co.)*, No. 98–6044, 2000 WL 33682815, at *4 (Bankr.M.D.N.C. Nov. 15, 2000). *See also Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 472–73, 82 S.Ct. 894, 897, 8 L.Ed.2d 44 (1962).

The Sixth Circuit has reported a bankruptcy case that provides guidance with respect to the trial of this adversary proceeding. In *Stone v. Kirk*, 8 F.3d 1079 (6th Cir.1993), the plaintiff sued the debtor for securities fraud and asserted that its debt was nondischargeable under 11 U.S.C. § 523(a)(6). The plaintiff demanded a jury trial as to both causes of action. The debtor's motion to strike the jury demand was denied and the jury found against the debtor with respect to both securities fraud and nondischargeability. On appeal, the debtor claimed it was error to submit the dischargeability action to the jury.

Acknowledging its earlier decision in *McLaren*, the Sixth Circuit conceded that the debtor would not have been entitled to a jury trial with respect to the dischargeability action and "neither, we take it, were the plaintiffs." *Stone*, 8 F.3d at 1090. But the Sixth Circuit held that the plaintiffs "were clearly entitled to go to the jury on their securities fraud claim." *Id.*

Citing *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959), the Sixth Circuit found it was permissible to try dischargeability and securities fraud in one lawsuit and to submit common questions of fact to the jury: "[T]he same court may try both legal and equitable causes in the same action. It may make sense, in such a situation, for the court to let the jury render a verdict in the case at law before the question of equitable relief is decided." *Stone*, 8 F.3d at 1090. The Sixth Circuit explained that collateral estoppel attaches to fact finding by the jury and would bind the bankruptcy court in its separate determination of the dischargeability complaint. For this reason, the submission of both causes of action to the jury was harmless error:

> In the case at bar ... the question of fraud was properly submitted to the jury as part of the securities case. It would be inappropriate for us to require the trial judge to render separate findings of fact here, because a finding contrary to that already made by the jury on the securities fraud issue could not stand. That being so, any error committed by the district court in submitting the issue of dischargeability to the jury was harmless.

*Id.* at 1091. *See also Lewis v. Sears, Roebuck & Co. (In re Lewis)*, 845 F.2d 624 (6th Cir.1988) (" 'The principles of collateral estoppel control: "[w]hen a party has a right to a jury trial on an issue involved in a legal claim the judge is ... bound by the jury's determination of that issue as it affects his disposition of an accompanying equitable claim" ' ") (quoting *Kitchen v. Chippewa Valley Schools*, 825 F.2d 1004, 1014 (th Cir.1987) (quoting *Lincoln v. Board of Regents of University Sys.*, 697 F.2d 928, 934 (11th Cir.), *cert. denied*, 464

U.S. 826, 104 S.Ct. 97, 78 L.Ed.2d 102 (1983))).

■ In this adversary proceeding, the causes of action against the various defendants involve common facts. Severing the Home Depot claims litigation from the actions against the non-creditor defendants would be complicated, duplicative, wasteful and unnecessary. All defendants have consented to trial by jury before the bankruptcy court. A jury will be empaneled for the causes of action against defendants other than Home Depot. The bankruptcy court will allow or disallow Home Depot's claim, deciding along the way the Debtor's counterclaims against Home Depot. Consistent with the Debtor's Seventh Amendment rights, the bankruptcy court will be bound by the jury's findings on issues of fact common to Home Depot and the other defendants.

An appropriate order will be entered.

### ORDER

The motion to strike the Debtor's jury demand is granted with respect to all causes of action against the Defendant, Home Depot. The motion to strike the Debtor's jury demand is denied with respect to all causes of action against Defendants other than Home Depot.

IT IS SO ORDERED.